**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

ISABELLA FORY, *individually and*
*on behalf of all other persons similarly situated,*

Case No.: 1:21-CV-8776

Plaintiffs,

**COLLECTIVE & CLASS**
**ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

-against-

EL PORTON BAR & RESTAURANT CORP.
(D/B/A EL PORTON), EL PORTON BAR & RESTAURANT
NO. 2 CORP.  (D/B/A EL PORTON BAR), RAFAEL MERLIN,
MEYLEN ENG, and MOISES MERLIN
 *jointly and personally,*

Defendants.

---------------------------------------------------------------------------X

Plaintiff ISABELLA FORY ("Ms. Fory" or "Plaintiff") individually and as and for all similarly situated employees alleges against EL PORTON BAR & RESTAURANT CORP. (D/B/A EL PORTON) ("EL PORTON"), EL PORTON BAR & RESTAURANT NO. 2 CORP. (D/B/A EL PORTON BAR) ("EL PORTON 2") , ("Defendant Corporations"), RAFAEL MERLIN, MEYLEN ENG, and MOISES MERLIN, (collectively, "Defendants") as follows:

## NATURE OF THE CLAIMS

1.  Plaintiff was an employee at Defendants' restaurant located at 3151 Broadway, New York, New York 10027.

2.  Defendants' payment schemes resulted in systematic underpayment of wages to Plaintiff and similarly situated employees in violation of the federal and state wage laws.

3.  Plaintiff brings this action to recover unpaid wages owed to her and similarly situated employees pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA") and

1

the New York Labor Law ("NYLL") §§ 650 *et seq*. Plaintiff also brings claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*.

4. Plaintiff alleges on her behalf and on behalf of other similarly situated current and former employees of Defendants that Defendants *willfully* violated the FLSA and NYLL by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay; (iii) failing to pay spread-of-hours premiums (iv) failing to provide the Notice of Acknowledgement of Payrate and Payday under N.Y. Lab. Law §195.1, and (v) failing to provide an accurate wage statement under N.Y. Lab. Law §195.3.

5. Plaintiff alleges pursuant to the FLSA and NYLL that she and similarly situated employees of Defendants are entitled to recover from Defendants: (1) unpaid overtime; (2) unpaid minimum wage; (3) unpaid spread-of-hours premiums; (4) penalties for wage notice violations; (5) liquidated damages; (6) interest and; (7) attorneys' fees and costs.

6. Plaintiff brings FLSA claims on behalf of herself and all other similarly situated employees who worked for the Defendants at any time during the three (3) years prior to the commencement of this action ("Collective Action Members").

7. Plaintiff brings NYLL claims on behalf of herself and all other similarly situated employees who worked for the Defendants at any time during the six (6) years prior to the commencement of this action ("Class" or "Class Action Members").

8. In addition, Defendants filed fraudulent tax withholdings to the Internal Revenue Service ("IRS") for Plaintiff and similarly situated employees without withholding proper Federal and State tax, social security, FICA, and employee withholding deductions. Accordingly, Plaintiff brings this action on behalf of herself and similarly situated employees pursuant to Internal Revenue Code 26 U.S.C. § 7434 for relief, damages, fees and costs in this matter because Defendants willfully

and fraudulently filed tax information forms with the IRS.

9. Plaintiff also brings claims pursuant to the New York State Executive Law §296 ("NYSHRL" and Title 8 of the Administrative Code of the City of New York ("NYCHRL") for sexual harassment, hostile work environment, and retaliation.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under New York state law.

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

12. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13. The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

## PARTIES

**Plaintiff**

14. Plaintiff was and is a resident of New York County, New York.

15. Plaintiff is a former employee of Defendants who ostensibly was employed as a waitress. However, Plaintiff spent over 20% of each shift performing non-tipped duties.

16. Plaintiff seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

**Defendants**

17. Defendant EL PORTON was and is a domestic for-profit corporation organized under the laws of the State of New York, with a principal place of business at 3151 Broadway, New York, New York 10027.

18. Defendant EL PORTON 2 was and is a domestic for-profit corporation organized under the laws of the State of New York, with a principal place of business at 576 Southern Blvd,  Bronx, New York 10455.

19. At all times relevant to this action, EL PORTON has been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.00.

20. At all times relevant to this action, EL PORTON 2 has been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.00.

21. In each year, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

22. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

23. Defendant RAFAEL MERLIN, upon information and belief, was and is a resident of the State of New York.

24. Defendant MEYLEN ENG, upon information and belief, was and is a resident of the State of New York.

25. Defendant MOISES MERLIN, upon information and belief, was and is a resident of the State of New York.

26. That at all times, Defendants operate restaurants in New York County, New York.

27. At all times relevant to this action, Defendant RAFAEL MERLIN was and is an executive, director, member, and owner of EL PORTON and EL PORTON 2.

28. At all times relevant to this action, Defendant MEYLEN ENG was and is an executive, director, member, and owner of EL PORTON and EL PORTON 2.

29. Defendants RAFAEL MERLIN and MEYLEN ENG exercised control over the employment terms and conditions of Plaintiff and similarly situated employees and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff and similarly situated employees.

30. At all times, Plaintiff could complain to RAFAEL MERLIN and MEYLEN ENG directly regarding any of the terms of her employment, and RAFAEL MERLIN and MEYLEN ENG. would have the authority to effect any changes to the quality and terms of Plaintiff's employment.

31. Defendants RAFAEL MERLIN and MEYLEN ENG exercised functional control over the business and financial operations of employees, including payments of wages, cash wages, recording hours, tax withholdings, wage notices, and adhering to Federal and State regulations for employment practices and compensation.

32. At all relevant times, RAFAEL MERLIN is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA and the Regulations thereunder.

33. At all relevant times, MEYLEN ENG is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA and the Regulations thereunder.

34. At all relevant times, Defendants RAFAEL MERLIN and MEYLEN ENG own, operate and controls Defendants EL PORTON and EL PORTON 2's day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees.

5

35. Each Defendant, either directly or indirectly, has hired and fired Plaintiff and other employees, controlled Plaintiff's work schedule and employment conditions, determined her payment rate and distribution of gratuities and kept at least some records regarding her employment.

## STATEMENT OF FACTS

**Plaintiff's Employment**

36. Defendant EL PORTON is a restaurant located at 3151 Broadway, New York, New York 10027.

37. Plaintiff commenced employment at Defendant EL PORTON on or about August 2020 through July 22, 2021.

38. Defendants RAFAEL MERLIN and MEYLIN ENG are regularly at the Defendants' restaurants and instruct employees what to do, have the authority to hire and terminate employees, change their pay and pay schedules, and maintain records regarding employee hours worked and compensation.

39. Defendants employed Plaintiff at EL PORTON as a waitress from August 2020 until she was terminated on July 22, 2021.

40. While Plaintiff was ostensibly employed as a waitress, she was required to spend a considerable part of her work day performing non-tipped duties, including but not limited to cleaning, mopping, sweeping, packing up food for deliveries,  cleaning bathrooms, prepare food ingredients for the next day, clean the windows, taking out the trash, resetting the tables and wiping the tables (hereafter the "non-tipped duties").

41. Plaintiff spent over 20% of each shift performing the non-tipped duties described above.

42. In her capacity as a waitress, Plaintiff was responsible for taking customers' food and beverage orders and service thereof.

43. Plaintiff's work duties required neither discretion nor independent judgment.

44. On any given day, Plaintiff worked with between 5 other waiters/waitresses.

45. From personally observing the other wait staff and speaking with them, Plaintiff knew they performed the same primary duties and received the same compensation structure at EL PORTON and EL PORTON 2.

46. During her employment with Defendants, Plaintiff regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47. Defendants operated EL PORTION with two (2) shifts. Shift 1 commenced at 11:00am to 5:00pm and Shift 2 commenced at 5:00pm to 2:00am.

48.  While Plaintiff was scheduled to work seven (7) days a week, Monday through Sunday at EL PORTON, Plaintiff regularly worked two consecutive shifts from 11:00am, until the last patron of the restaurant was served and the restaurant was cleaned for the following day, typically 3:00am.

49. Plaintiff worked between twelve and sixteen (12-16) hours per day, well over 72-80 hours a week while employed at EL PORTON.

50. Defendants compensated Plaintiff solely a flat rate of $20.00 to $30.00 per shift. Accordingly, Plaintiff was compensated only $20.00 to $40.00 *per day* plus any tips pooled at the restaurant, as was customary practice of Defendants at their restaurants.

51. Indeed, at times where Plaintiff and other similarly situated employees did not receive tips from the patrons, they were working *entirely for free*, without even earning the minimum wage.

52. In a scheme to avoid paying regular wages, overtime wages, and payroll taxes, Defendants failed to pay *any* wages to Plaintiff and similarly situated employees and solely compensated them in cash for tips they earned from the patrons of the restaurants.

53. That at all times herein, even the pooled tips were personally collected and distributed by RAFAEL MERLIN and MEYLIN ENG.

54. Plaintiff worked between 72-80 hours a week without meal breaks during her 12–16-hour daily

shifts while working for Defendants.

55. While at times Plaintiff and other similarly situated employees clocked in at Defendants' restaurants, Defendant RAFAEL MERLIN and MEYLIN ENG personally clocked employees out despite requiring the employees to continue working until the last patron was served and the restaurant cleaned for the following day.

56. Plaintiff's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

57. For example, Defendants required Plaintiff to work an additional 1 hour to 3 hours over her scheduled departure time every day, and did not compensate Plaintiff for any hours.

58. In addition, in order to get paid, Defendants required Plaintiff and similarly situated employees to sign a document in which Defendants misrepresented her pay.

59. Plaintiff was a victim of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages owed for the hours worked.

## Defendants' Unlawful Wage and Corporate Policies

60. Defendants paid Plaintiff and other similarly situated employees only $20.00 to $30.00 per shift; $20.00 to $40.00 *per day*, when the minimum was $15.00 *per hour*.

61. Defendants entirely failed to pay Plaintiff and similarly situated employees overtime compensation for all hours worked in excess of forty (40) hours a week.

62. Instead, Defendants' policy and practice was to compensate Plaintiff and similarly situated employees a mere $20.00 to $40.00 per day.

63. Defendants had a common policy and practice of compensating Plaintiff and other similarly situated employees a measly flat rate per day and entirely failed to compensate employees the minimum wage, overtime premiums, and spread-of-hour pay.

64. Indeed, at times where Plaintiff and other similarly situated employees did not receive tips from the patrons of the restaurants, Plaintiff and similarly situated employees were significantly deprived of wages.

65. Plaintiff and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

66. Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

67. New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

68. In violation of federal and state law as codified above, Defendants classified Plaintiff and other tipped workers as tipped employees, and paid them at a rate that was even lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

69. Defendants failed to inform Plaintiff that Defendants intended to take a deduction against Plaintiff's earned wages for tip income, as required by the NYLL before any deduction may be taken.

70. Defendants failed to maintain a record of tips earned by Plaintiff. Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

71. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

72. On a number of occasions, Defendants required Plaintiff to sign a document the contents of which she was not allowed to review in detail.

73. By speaking with other wait staff and observing Defendants' policies and practices, Plaintiff and similarly situated employees were not paid the minimum wage, overtime-premiums, and spread of hours pay.

74. Defendants' practices are common among and between the restaurants as they are commonly owned, have the same employment policies, products, and employees are transferred by and between the Defendants' restaurants.

75. Plaintiff and the Collective and Class Action Members were paid by the same corporate policies of Defendants, including only compensating the waits staff on merely tips, failing to pay minimum wage for all hours worked, overtime premiums and spread-of-hour premiums and failing to provide wage statements and wage notices.

76. Defendants did not provide Plaintiff or the Collective and Class Action Members with proper wage notices at the time of hire or by February 1 of each year.

77. Defendants failed to provide accurate wage statements to Plaintiff and the Collective and Class Action Members which reflected, among other information, all hours worked, including overtime hours, the regular and overtime pay rate(s) during the pay period.

78. Despite the fact that Plaintiff and the Collective and Class Action Members typically worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) their hourly rate.

79. Despite the fact that Plaintiff and the Collective and Class Action Members worked in excess of ten (10) hours per day, Defendants failed to pay Plaintiff and the Collective and Class Action Members an extra hour of minimum wage for such days.

80. Upon information and belief, throughout the collective and class period and continuing until

today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

81. Defendants' actions are willful as Defendants were well aware of their illegal wage schemes, having been previously subjected to litigation in this jurisdiction for the same and similar claims herein.

**Plaintiff's Claims Under NYSHRL and NYCHRL**

82. During the course of her employment with Defendants, Plaintiff was subjected to pervasive sexual harassment, sexual assault, hostile work environment, and retaliation.

83. The sexual harassment included blatant physical groping by Defendant MOISES MERLIN as well as other male kitchen staff employees at EL PORTON.

84. Plaintiff was 19 years old when she commenced employment for Defendants and was subjected to verbal and physical sexual abuse and assault under the supervision of Defendants RAFAEL MERLIN and MEYLIN ENG.

85. By way of background, Plaintiff was physically sexually assaulted by three males at EL PORTON.

86. Plaintiff was continuously subjected to sexual comments about her breasts, buttocks, and her physical appearance in general.

87.  On more than one occasion, the male employees suggested that Plaintiff should "sell her body" for money and overtly solicited sex from Plaintiff.  These propositions are disgraceful to say the least.

88. By way of example, one of the chefs at EL PORTON, Gabino Moso, a male in his 50s, openly solicited Plaintiff for sex. Gabino Moso, continuously subjected Plaintiff to sexual harassment on a daily basis.

89. Gabino Moso first attempted to give Plaintiff money and presents, looking for sexual favors in

11

exchange, to which Plaintiff declined.

90. Gabino Moso continuously asked Plaintiff if she needed a ride home, or if she would like to come

sleep at his home. Plaintiff declined each instance. She was 19 years old at the time.

91. At first, the sexual requests were subtle, with gifts or flowers. However, the conduct escalated

when Gabino Moso directly stated to Plaintiff that he would pay her for sex.

92. On a daily basis, Gabino Moso asked Plaintiff if he could crack her back, just trying to get his

arms around her to feel her body on his. When Plaintiff turned down all of the advances, he took

it upon himself to get his sexual gratification from her.

93. On at least two occasions, Gabino Moso smacked and grabbed Plaintiff's buttocks.

94. By way of example, while Plaintiff was washing dishes in the kitchen, unbeknownst to her,

Gabino Moso was lurking and watching her and came up behind her and smacked her buttocks.

95. Plaintiff was distressed and screamed.

96. Another waitress informed Defendant MEYLEN ENG of the incident. However, clearly, nothing

was remedied.

97. Thereafter, Gabino Moso continued his sexual harassment. While Plaintiff was grabbing an item

out of the refrigerator, he again came up from behind and smacked Plaintiff's buttocks.

98. Another chef, Mingo Lopez, also actively solicited Plaintiff for sex and encouraged other males

in the restaurant to do so as well.

99. Mingo Lopez would continuously make sexually vulgar comments to Plaintiff, attempting to

entice her to engage with him sexually.

100.     Mingo Lopez would stare at Plaintiff while on his personal phone and openly state – "I'm

on my way to fuck a Venezuelan girl" – inferring Plaintiff.

101.     Plaintiff was distraught and felt unsafe at EL PORTON.  To make matters worse, Mingo

Lopez would also engage the male delivery drivers in front of Plaintiff and ask them "how much

would you give to fuck her" pointing to Plaintiff. "$700?" "would you give $1,500?"

102.     Thereafter, the male delivery drivers felt it was appropriate to also join in on the sexual harassment and started to touch and graze Plaintiff's body as they passed by her in the restaurant.

103.     This type of conduct completely runs afoul of the laws that are enacted specifically to protect females in the workplace.

104.     Realizing that Plaintiff would not give in to his sexual demands, Mingo Lopez also engaged in a conduct of retaliation.

105.     Mingo Lopez would routinely prepare meals for the employees at EL PORTON, which they would eat while still working in the restaurant.

106.     While he had prepared meals for Plaintiff before, he intentionally ceased preparing any meals for Plaintiff after she refused to submit to his sexual advances.

107.     When Plaintiff confronted Mingo Lopez about how he would prepare meals for others and not her, he replied "I decide if you eat." This was a clear act of *quid pro quo* sexual harassment and retaliation for Plaintiff not being submissive.

108.     Thereafter, in an attempt not to engage further with Mingo Lopez, Plaintiff simply did not eat a meal or brought a meal with her to eat at the restaurant.

109.     By way of another example of Mingo Lopez's retaliatory conduct, he intentionally prepared improper orders for patrons of the restaurant that Plaintiff was serving in an attempt for the patrons not to tip Plaintiff as he knew she was only compensated based on the tips received.

110.     Indeed, this happened on several occasions and despite Plaintiff's pleas, she did not earn any money on tables on which Mingo Lopez intentionally mis-prepared orders.

111.     The most recent instance wherein Plaintiff was a victim of sexual assault in the workplace was on July 2021 at or about 2:00am.

112.     That at all times herein, Defendant MOISES MERLIN was the nephew of Defendant

13

RAFAEL MERLIN and was employed as a bartender at EL PORTON.

113.     That at all times herein, Defendant MOISES MERLIN continuously made sexually suggestive advances directed to Plaintiff, touching her, making vulgar comments, and serving her alcohol despite being aware that Plaintiff was underage.

114.     In July 2021, Defendant MOISES MERLIN physically groped Plaintiff's intimate bodily part, forcibly touching her without Plaintiff's consent for the purpose of gratifying his sexual pleasure.

115.     Plaintiff was shocked and again screamed. She had enough. Plaintiff left the restaurant that day in the early morning hours of 2:00am, crying due to the distress she felt.

116.     The next day, Defendant RAFAEL MERLIN fired Plaintiff when Plaintiff pleaded with him to have the conduct by Defendant MOISES MERLIN and other males stopped.

117.     Defendant RAFAEL MERLIN sat down with Plaintiff  and instead chastised Plaintiff for leaving the restaurant early at 2:00am on the day she was groped.

118.     That at all times herein, Defendant RAFAEL MERLIN was well aware of the inappropriate conduct of the males working at the restaurant towards Plaintiff and other young females.

119.     Defendant RAFAEL MERLIN further chastised Plaintiff when she pled with him about the inappropriate conduct and sexual abuse she was subjected to.

120.     Defendant RAFAEL MERLIN replied in Spanish to Plaintiff stating , "I can talk to them but men will be men and do what they do – maybe you need to change something about you."

121.     That at all times, instead of implementing and enforcing the sexual harassment laws in New York, Defendant RAFAEL MERLIN joined, aided, and condoned the grave sexual harassment against young women in the restaurant.

122.     That at all times herein, Defendant RAFAEL MERLIN aided and abetted the sexual

abuse, sexual assault, and sexual harassment of Plaintiff.

## FLSA COLLECTIVE ACTION ALLEGATIONS

123.     Plaintiff bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29

U.S.C. § 216(b), on behalf of all non-exempt tipped employees, including servers and waitstaff

employed by the Defendants on or after the date that is three (3) years before the filing of the

Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

124.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been

similarly situated, have had substantially similar job requirements and pay provisions, and are

and have been subjected to Defendants' decisions, policies, plans, programs, practices and

procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them proper wages, overtime premiums and spread-of-hour premiums. The claims of the

Plaintiffs stated herein are essentially the same as those of the FLSA Collective Plaintiffs.

125.     The claims for relief are properly brought under and maintained as an opt-in collective

action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are

readily ascertainable. For purposes of notice and other purposes related to this action, their names

and addresses are readily available from Defendants. Notice can be provided to the FLSA

Collective Plaintiffs via first class mail in English, Spanish, and any other language.

126.     Under 29 U.S.C. § 206, Plaintiffs seek to assert these allegations and claims as a collective

action for:

> All persons whom Defendants employ and have employed who were wait staff and other
> comparable tipped positions with different titles including "waiter", "waitress" "runner"
> or "server" any time since January 30, 2016 to the entry of Judgment in this case (the
> "Collective Action Period"), who were non-exempt employees under the FLSA (the
> "Collective Action Members").

127.     Plaintiffs and the Collective Action Members are similarly situated on several legal and

factual issues, including:

a.  Defendants employed the Collective Action Members;

b.  Collective Action Members performed similar duties;

c.  Defendants failed to keep true and accurate records for all hours Plaintiffs and Collective Action Members worked;

d.  Defendants willfully and recklessly violated the FLSA;

e.  Defendants failed to pay the Collective Action Members minimum wages for hours worked each week and overtime compensation for hours worked in excess of 40 hours per workweek at the proper rate, violating the FLSA and the regulations promulgated thereunder;

f.  Defendants are not entitled to avail themselves of the "tip credit" for unlawfully compensating the plaintiff at a significantly reduced rate, failing to compensate Plaintiff entirely at the minimum wage and failing to properly inform the Collective Action Members of the "tip credit"; and

g.  Defendants should be enjoined from such violations of the FLSA in the future;

## RULE 23 CLASS ALLEGATIONS – NEW YORK

128.  Plaintiff also bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including waiters, waitstaff, servers, and runners employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

129.  All said persons, including the Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member are also determinable from the Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are

16

readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P.

Rule 23.

130.     The proposed Class is so numerous that a joinder of all members is impracticable, and

the disposition of their claims as a class will benefit the parties and the Court. Although the

precise number of such persons is unknown, and the facts on which the calculation of that number

are presently within the sole control of Defendants; upon information and belief, there are in

excess of twenty (20) Class Members.

131.     The Plaintiff's claims are typical of those claims, which could be alleged by any member

of the Class, and the relief sought is typical of the relief, which would be sought by each member

of the Class in separate action. All the Class members were subject to the same corporate

practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices

affected all Class members similarly, and Defendants benefited from the same type of unfair

and/or wrongful acts as to each Class member. The Plaintiff and other Class members sustained

similar losses, injuries and damages arising from the same unlawful policies, practices and

procedures.

132.     The Plaintiff is able to fairly and adequately protect the interests of the Class and have no

interests antagonistic to the Class. The Plaintiff is represented by attorneys who are experienced

and competent in both class action litigation and employment litigation and have previously

represented plaintiffs in wage and hour cases.

133.     A class action is superior to other available methods for the fair and efficient adjudication

of the controversy – particularly in the context of the wage and hour litigation where individual

class members lack the financial resources to vigorously prosecute a lawsuit against a corporate

defendant. Class action treatment will permit a large number of similarly situated persons to

prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender.

134.     Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress to wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

135.     The adjudication of the individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

136.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

137.     Defendants and other employers throughout the state violate the New York wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

138.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)  Whether Defendants employed the Plaintiff and Class Members;

(b)  What are and were the policies, practices, programs, procedures, protocols and plans of the Defendants regarding the types of work and labor for which the Defendants did not pay the Class Members properly;

(c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Plaintiff and Class Members for their work;

(d)  Whether Defendants properly notified the Plaintiff and Class Members of their hourly rate, overtime rate, and tip credit;

(e)  Whether Defendants compensated Plaintiff and Class Members spread-of-hours premium pay;

(f)  Whether Defendants provided statutory meal breaks for Plaintiff and Class members; and

(g)  Whether Defendants paid the Plaintiff and Class Members the proper minimum wage and overtime premium compensation;

**COUNT I**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

139.  Plaintiff, on behalf of herself and the Collective Action Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

140.  By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq*. including 29 U.S.C. §§ 206 and 215(a)(2).

141.  Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. §

19

216(b).

## COUNT II
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Collective Action Members)

142.      Plaintiff, on behalf of herself and the Collective Action Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

143.      By failing to pay overtime at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants violated and continue to violate the FLSA, 29 U.S.C. §§201 *et. seq.,* including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

144.      Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their overtime wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## COUNT III
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiff and Class Members)

145.      Plaintiff, on behalf of herself and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

146.      Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and the regulations promulgated thereunder.

147.      Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and Class Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Class Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and

costs and disbursements of the action pursuant to NYLL §§663(1) *et seq.*

**COUNT IV**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and Class Members)**

148.     Plaintiff, on behalf of herself and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

149.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay overtime at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours each week, in violation of the NYLL and the regulations promulgated thereunder.

150.     Defendants' failure to pay overtime caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Class Members are entitled to recover from Defendants their overtime wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§663(1) *et seq.*

**COUNT V**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiff and Class Members)**

151.     Plaintiff, on behalf of herself and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

152.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Plaintiff and the Class Members worked either a split shift or more than ten (10) hours per day, in violation of NYLL §§650 *et. seq.,* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs, tit. 12, §§137*1.7(2010), 146-1.6(2012).

153.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Class

Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT VI**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE**
**(Brought on Behalf of Plaintiff and Class Members)**

154.    Plaintiff, on behalf of herself and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

155.    Defendants have willfully failed to supply Plaintiff and Class Members notice as required by Article 6, § 195 containing Plaintiff's and the Class Members' rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other: hourly rate or rates of pay and overtime rate or rates of pay; regular pay day designated by the employer in accordance with NYL, Article 6, §191; the name of the employer, or any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer plus such other information as the commissioner deems material and necessary.

156.    Due to the Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided under NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**COUNT VII**
**NEW YORK STATE HUMAN RIGHTS LAW**
**SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**
**(Brought on Behalf of Plaintiff)**

157.    Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

158.    New York State Executive Law § 296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

159.    Defendants engaged in an unlawful discriminatory practice in violation of the New York Executive Law by creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her sex.

160.    The aforesaid discriminatory acts by Defendants, its officers, directors, supervisors, managers and/or employees, including Defendants RAFAEL MERLIN, MEYLEN ENG, and MOISES MERLIN, perpetrated against Plaintiff because of her gender, violated Plaintiff's violated Plaintiff's rights under New York State Human Rights Law – Executive Law Article 15 Section 290 *et seq*.

161.    Defendants engaged in unlawful discriminatory practices by subjected Plaintiff to sexual harassment and a hostile work environment.

162.    As a consequence of the foregoing conduct by Defendants, Plaintiff has sustained and continues to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff has incurred and continues to incur monetary

economic loss as she was subjected to adverse employment action, including the termination of her employment.

163.     That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

**COUNT VIII**
**NEW YORK STATE HUMAN RIGHTS LAW - RETALIATION**
**(Brought on Behalf of Plaintiff)**

164.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

165.     New York State Executive Law § 296(7) provides that is shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed practices forbidden under this article."

166.     The aforesaid acts of intentional retaliation against Plaintiff by Defendants, its officers, directors, supervisors, managers and/or employees, including Defendant RAFAEL MERLIN and MEYLEN ENG violated Plaintiff's rights provided under New York State Human Rights Law – Executive Law Section 290 *et. seq.*

167.     As a consequence of the foregoing conduct by Defendants, Plaintiff has sustained and continues to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff has incurred and continues to incur monetary economic loss as she was subjected to adverse employment action, including the termination of her employment.

168.     That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

## COUNT IX
## NEW YORK CITY HUMAN RIGHTS LAW
## SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT
### (Brought on Behalf of Plaintiff)

169.    Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

170.    The Administrative Code of the City of New York § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: "(a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

171.    The sexually hostile work environment for women created, perpetuated, encouraged, and maintained by Defendants, its officers, directors, supervisors, managers and/or employees, violated Plaintiff's rights as provided under New York City Human Rights Law Title 8 ('NYCHRL"), *et. seq.*

172.    Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(a) by creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her sex.

173.    Defendants engaged in unlawful discriminatory practices by subjected Plaintiff to sexual harassment and a hostile work environment.

174.    As a consequence of the foregoing conduct by Defendants, Plaintiff has sustained and continues to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff has incurred and continues to incur monetary

economic loss as she was subjected to adverse employment action, including the termination of her employment.

175.     That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

**COUNT X**
**NEW YORK CITY HUMAN RIGHTS LAW - RETALIATION**
**(Brought on Behalf of Plaintiff)**

176.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

177.     The New York City Administrative Code Title 8, § 8-107(1) (e) provides that it shall be an unlawful retaliatory practice: "For an employer… to discharge… or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

178.     The aforesaid acts of intentional retaliation against Plaintiff by Defendants, its officers, directors, supervisors, managers and/or employees, including Defendants RAFAEL MERLIN and MEYLEN violated Plaintiff's rights provided under New York City Human Rights Law – Title 8 ("NYCHRL"), *et. seq.*

179.     As a consequence of the foregoing conduct by Defendants, Plaintiff has sustained and continues to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff has incurred and continues to incur monetary economic loss as she was subjected to adverse employment action, including the termination of her employment.

180.     That as a direct result of the foregoing misconduct of Defendants, Plaintiff is entitled to compensatory damages, punitive damages, and attorneys' fees in the sum prescribed by NYC

Human Rights Law Title 8 *et. seq.* and any other damages in an amount which exceeds the jurisdictional limits of lower Courts.

## COUNT XI
## CIVIL DAMAGES FOR
## FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. §7434(a).

181.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

182.     By failing to provide Plaintiff with accurate IRS Forms for all of the tax years during which she was employed by Defendants, and failing to properly record, account for, and report to the IRS all monies actually earned and paid to Plaintiff for all of her work Plaintiff performed during the course of her employment with the Defendants, and failing to properly report correct amounts on IRS forms as monies withheld, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. §7434.

183.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

A. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action Members;

B. Requiring Defendants to file with the Court and provide to Plaintiffs' counsel a list of all names and current home addresses and email addresses of all individuals who currently work or have worked for Defendants as non-exempt during the applicable statute of limitations period;

C. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

D. An order tolling the statute of limitations;

E. A declaratory judgment that practices complained of herein are unlawful under the FLSA and NYLL;

F. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

G. An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to FLSA and the NYLL and supporting regulations;

H. An award of liquidated damages for non-payment of minimum wages and overtime compensation under FLSA and NYLL and supporting regulations;

I. An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

J. An award of fifty ($50) dollars per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6, § 195(1) pertaining to distribution of wage notice, occurred or continued to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL Article 6, §198(1-b);

K.  An award of two hundred fifty dollars ($250) per Plaintiff and each of the Class Members for each day that violation of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 §198(1-d);

L.  An award of pre-judgment and post-judgment interest;

M.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

N.  An award of damages resulting from additional tax debt and additional time and expenses associated with any necessary tax correction;

O.  An award to Plaintiff pursuant to her claims under NYSHRL and NYCHRL for the conduct complained herein as Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses, pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, attorney's fees, and other non-pecuniary losses;

P.  All costs and attorney's fees incurred in prosecuting claims under NYSHRL and NYCHRL; and

Q.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact the Complaints raises.

Dated: October 27, 2020
   New York, New York

         **EMRE POLAT, PLLC**
         EMPLOYMENT ATTORNEYS

         /s/ *Emre Polat*
         _____
         Emre Polat, Esq. (EP6063)
          45 Broadway, Suite 1420
         New York, New York 10006
         (212) 480-4500
         emre@emrelaw.com
         *Attorneys for Plaintiffs*